**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; BOARD OF TRUSTEES OF THE LABORERS VACATION-HOLIDAY TRUST FUND FOR NORTHERN CALIFORNIA; BOARD OF TRUSTEES OF THE LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA; and BOARD OF TRUSTEES OF THE LABORERS TRAINING AND RETRAINING TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>                    Plaintiffs,<br><br>        v.<br><br>DRONKANOKI, INC., a California Corporation; and TRAVIS DEAN ANDERSON, an Individual,<br>Social Security Administration,<br><br>                    Defendant. | No. C-06-2045 SC<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF <u>DEFAULT JUDGMENT</u> |

I.   **INTRODUCTION**

Plaintiffs Board of Trustees of the Laborers Health and Welfare Trust Fund for Northern California et al. ("Plaintiffs" or "Trust Funds") brought this action against Defendants Dronkanoki, Inc. ("Defendant Dronkanoki") and Travis Dean Anderson ("Defendant Anderson") (together "Defendants") under the National Labor

Management Act, 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Defendants did not respond, and, on May 22, 2006, default was entered against Defendants. On July 19, 2006, Plaintiffs made a motion for default judgment. Defendants have not appeared.

For the reasons stated herein, Plaintiffs' motion for default judgment is GRANTED.

**II.   <u>BACKGROUND</u>**

Plaintiffs filed suit against Defendants on March 17, 2006. <u>See</u> Docket No. 1. The Complaint states that Defendants failed "to make trust fund contributions and to submit to an audit of their books and records as demanded of them by [Defendants], and as required by its collective bargain agreements, by the Trust Agreements and by provisions of federal law." Compl. at 2.

On April 10, 2006, Defendants were both personally served with the Summons and Complaint. <u>See</u> Docket No. 5. After Defendants did not respond to the Complaint, Plaintiffs requested entry of default, which was entered on May 22, 2006. <u>See</u> Docket No. 8.

Plaintiffs filed the present Motion on July 19, 2006, which, along with related filings, was served on Defendants by mail on the same day. <u>See</u> Docket Nos. 12-16. According to the Motion and its accompanying declarations, it is "reasonably believed that [Defendant] Travis Dean Anderson is neither an infant nor incompetent person nor in military or uniformed service or otherwise exempt under the Soldiers' and Sailors' Civil Relief Act

2

of 1940 . . . or the Service Civil Relief Act of 2003." Pls' Mem.
at 6.

### III. **LEGAL STANDARD**

After entry of default, the Court may enter a default
judgment. Fed. R. Civ. P. 555. Its decision whether to do so,
while "discretionary," Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th
Cir. 1980), is guided by several factors.

As a preliminary matter, the Court must "assess the adequacy
of the service of process on the part[ies] against whom default is
requested." Board of Trustees of the N. Cal. Sheet Metal Workers
v. Peters, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2
(N.D. Cal. Jan. 2, 2001).

If the Court determines that service was sufficient, it may
consider the following factors in its decision on the merits of a
motion for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2)
> the merits of plaintiff's substantive claim, (3) the
> sufficiency of the complaint, (4) the sum of money at
> stake in the action; (5) the possibility of a dispute
> concerning material facts; (6) whether the default was
> due to excusable neglect, and (7) the strong policy
> underlying the Federal Rules of Civil Procedure favoring
> decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In doing
so "the factual allegations of the complaint . . . will be taken
as true." TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915,
917 (9th Cir. 1987)(internal quotations omitted).

Should the Court grant the Motion on the merits, however, the
same standard does not guide its determination whether, and how
much, to award in damages. Televideo Systems, Inc. 826 F.2d at

United States District Court
For the Northern District of California

3

917.   In an ERISA case based on allegations that an employer failed to make required plan contributions and where the employer was delinquent at the time the action is filed, upon entry of default judgement against the employer, a court <u>must</u> award damages according to the statutory scheme outlined in 29 U.S.C. § 1132(g)(2).   <u>Northwest Administrators, Inc. v. Albertson's, Inc.</u>, 104 F.3d 253, 257 (9th Cir. 1996).   However, "[p]laintiff[s] ha[ve] the burden of proving damages through testimony or written affidavit."   <u>Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.</u>, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). Finally, when a motion for default judgment requests injunctive relief, the already strong policy favoring a decision on the merits is strengthened.   Wright, Miller & Kane Federal Practice and Procedure Civil 3d § 2693.

**IV.   <u>DISCUSSION</u>**

    A.   <u>Service of Process</u>

       Service of process against both Defendants was adequate. Federal Rule of Civil Procedure 4(e) allows service upon an individual by personally delivering to the individual the summons and complaint.   Fed. R. Civ. P. 4(e)(2).   Rule 4(h) allows service upon a corporation by personally delivering the summons and complaint to the corporation's authorized agent.   Fed. R. Civ. P. 4(h)(2).   On April 10, 2006, a copy of the Complaint, Summons, and other filings were personally delivered to Defendant Anderson. <u>See</u> Docket No. 5.   Simultaneously, the summons and complaint as to Defendant Dronkanoki, Inc. was personally delivered to Travis

4

Anderson as Dronkanoki, Inc.'s authorized agent. <u>See</u> <u>Id</u>.

B.   <u>Merits of Motion</u>

Accepting the allegations in the Complaint as true, as it must, the Court finds that <u>Eitel</u> factors weigh in favor of entering default judgment.

1.   <u>Prejudice</u>

Plaintiffs would be prejudiced absent entry of default judgment.  According to Plaintiffs' Motion, which is not disputed by Defendants, Defendants' failure to make required contributions has caused Plaintiffs harm by denying benefits to the Trust Funds' beneficiaries and by denying "sufficient funds" to the Trust Funds.  Mot. at 4.  Without the entry of a default judgment, it appears that Plaintiffs would not have a remedy for these harms. Such a situation qualifies as prejudice.  <u>See</u> <u>PepsiCo, Inc. v. California Security Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

2.   <u>Merits of Plaintiffs' Substantive Claims</u>

Plaintiffs' substantive claims against both Defendants are meritorious.

Attached to the Declaration of John Hagan submitted in support of the Motion are documents showing that Defendant Anderson, as president of Dronkanoki, Inc., signed a Memorandum Agreement with Local Union No. 185 of Northern California on January 19, 2004 ("Memorandum Agreement").  <u>See</u> Hagan Decl., Exs. A-B.  The Memorandum Agreement *inter alia* obligates signatory employers to "comply with all wages, hours, and working conditions set forth in the the Laborers' Master Agreement for Northern

United States District Court
For the Northern District of California

California [("Master Agreement")]" and "to pay all sums of money for each hour paid for or worked by employees performing work covered by said Master Agreement to each and every all and singular of the Trust Funds specified in said Master Agreement . . . and to accept and assume and be bound by all of the obligations of any trust agreement, plan, or rules or any amendments, modifications, or changes, thereof . . . , including the obligation to pay liquidated damages and other sums due upon delinquency as provided in said trust agreements." Id., Ex. B.

The Master Agreement, also attached to Hagan's Declaration, lists, with slightly modified names, the Trust Funds, and establishes a schedule by which employers are obligated to contribute to them. See Id., Ex. C.

The Complaint alleges that the Trust Funds are "employee benefit plans created by written trust agreements subject to and pursuant to . . ERISA." Compl. at 2. The Complaint further alleges that Defendant Dronkanoki, Inc. is an employer in an industry affecting commerce, that Defendant Anderson owns, operates and controls Dronkanoki, Inc., and that "Dronkanoki Inc. and Travis Dean Anderson constitute a single employer." Id. at 3.

According to the Complaint, and in line with the documentary evidence discussed above, Defendants entered into the Memorandum Agreement with the Northern District Council of Laborers on January 19, 2004. Id. at 3. The Complaint terms the Memorandum Agreement a "written collective bargaining agreement." Id. The Complaint alleges, again in line with the documentary evidence, that by entering into the Memorandum Agreement, the Defendants

6

bound themselves to comply with the Master Agreement and, thus, the trust agreements which establish the Trust Funds as well. <u>Id</u>.

Pursuant to these agreements, the Complaint alleges, Defendants were required to make certain contributions to the Trust Funds, and allow Plaintiffs access to their books and records to determine the amount the Trust Funds were due.  <u>Id</u>. at 4-5.

According to the Complaint, over the last two years, Defendants have failed to comply with these obligations, by failing to make certain required contributions and denying the Trust Funds the required access.  <u>Id</u>. at 4.  Section 515 of ERISA states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  Plaintiffs' claim that Defendants have breached their obligations under ERISA to make contributions to the Trust Funds therefore has merit.

On the basis of Plaintiffs' undisputed allegation in the Complaint that the Defendants constitute a single employer, Plaintiffs' claim that both Defendants should be held jointly and severally liable for any liability flowing from these breaches also has merit.

3.  <u>Sufficiency of the Complaint</u>

The Complaint recites the basic allegations on which the Court based its finding above that Plaintiffs' substantive claims

had merit.  The Court, therefore, finds that the Complaint is
sufficient.

          4.   <u>Other Factors</u>

     None of the remaining <u>Eitel</u> factors dissuade the Court from
entering a default judgment against Defendants.  The sum of money
at stake in the action, including attorneys' fees is $23,012.82,
Mem. at 11.  While not insignificant, this amount is not
particularly large.  As the case turns upon a set of obligations
clearly stated in written agreements, and Defendants have been
served with the Complaint, which alleges Defendants' breach of
those obligations, there does not seem a strong possibility of a
dispute regarding material facts.  There is also no indication
that Defendants failed to respond due to excusable neglect.
Finally, while the policy underlying the Federal Rules of
Procedure favors a decision on the merits, it is not controlling
in light of the other factors which point to the appropriateness
of entering default judgment in this case.

     The Court therefore finds that entering default judgment is
warranted.

     C.   <u>Remedy</u>

     Because the Court finds that Plaintiffs are entitled to entry
of a default judgment on their § 1145 claim, and the Defendants
were delinquent at the time Plaintiffs' action was filed, it is
required to award Plaintiffs the following types of relief: (A)
the unpaid contributions,(B) interest on the unpaid
contributions,(C) an amount equal to the greater of interest on
the unpaid contributions, or liquidated damages provided for under

United States District Court
For the Northern District of California

8

**United States District Court**
For the Northern District of California

the plan in an amount not in excess of 20 percent of the amount of unpaid contributions; (D) reasonable attorney's fees and costs, and(E) such other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2); see Northwest Administrators, Inc., 104 F.3d at 257. However, it will only award damages which Plaintiffs have proved up. See Board of Trustees of the Boilermaker Vacation Trust, 389 F. Supp. 2d at 1226.

      1.   Unpaid Contributions

    According to Plaintiffs' Motion, they are owed $13,513.35 for contributions unpaid by Defendants during the period from June 2005 to December 2005. Mem. at 8.

    In support, Plaintiffs submit: the declaration of John Hagan, Accounts Receivable Manager of the office which provides administrative services to the Trust Funds, see Hagan Decl., ¶ 1; "employer reports" for the months of September 2005 (apparently filled out and signed by Defendant Anderson on November 13, 2005), October 2005 (apparently filled out and signed by Defendant Anderson on November 13, 2005), November 2005 (apparently filled out and signed by Defendant Anderson on January 6, 2006),[1] and December 2005 (apparently filled out and signed by Defendant Anderson on January 10, 2006),[2] which respectively show the

---

[1]The actual date next to what appears to be Defendant Anderson's signature actually reads "1/06/05." The Court assumes that this is in error, as the report is clearly for November 2005.

[2]The actual date next to what appears to be Defendant Anderson's signature actually reads "1/10/05." The Court assumes that this is in error, as the report is clearly for December 2005.

Defendants owing contributions of $9,878.50, $6,123.75, $3,312.00, and $1,207.50 ("Employer Reports"), see id., Ex. G; a single employee's "payroll check stub worksheet" which shows Defendants having under-reported the employee's hours for June and over-reporting the employee's hours for July, and which demands $880.00 in contributions ("Payroll Worksheet"), see id., Ex. H; a table prepared on March 3, 2006 by a member of Mr. Hagan's staff which shows Defendant Dronkanoki owing a total of $21,092.00 in unpaid contributions ("March 3rd Table"), see id., Ex. I; and a table prepared on June 6, 2006 by a member of Mr. Hagan's staff which shows Defendant Dronkanoki owing a total of $13,513.13 in unpaid contributions ("June 6th Table"), see id., Ex. F.

The contribution rates in the Employer Reports match the rates recited in the Master Agreement as amended. See id., Exs. C, D, G. The March 3rd Table lists contribution amounts unpaid to particular Trust Funds which match the amounts Defendant Anderson listed as owing in the Employer Reports. See id. at Exs. G, I. The June 6th Table, according to Hagan's Declaration, reflects a reduction of these figures by the amount which the Trust Funds received in payments following the creation of the March 3rd Table. Id., ¶ 17. The Court finds that Plaintiffs have met their burden of proof as to Defendants' under-payment of contributions to the Trust Funds for the months of September 2005, October 2005, November 2005, and December 2005 in the total amount of $12,638.95.

The Court, however, finds that Plaintiffs have not met their burden as to $874.40 which Plaintiffs claim they are owed as a

10

result of Defendants' alleged under-reporting of hours for a single employee.  The Hagan Declaration states:

> [Defendants] under-reported for June a total of 80 hours
> of work, yielding (a gross figure of) $888.00 owed for
> June, and [Defendants] over-reported 90 hours for July,
> which would yield a credit.  Thus, [the March 3rd Table]
> and the later [June 6th Table] show 80 hours and a (net
> figure) of $874.40 owed for June 2005.

Id., ¶ 18.  This description accurately reflects the submitted documentation; however, it does not sufficiently explain how the figures it recites were reached.  In particular, there is no explanation how application of a credit for over-reporting 90 hours reduced the debt for under-reporting 80 hours by only $5.60. The Court therefore declines to order compensation for the $874.40 which Plaintiffs claim they are owed on these grounds.

       2.   Liquidated Damages

Plaintiffs have requested liquidated damages in the amount of $2,250.  Mem. at 9.  Under 29 U.S.C. § 1132(g)(2)(C)(ii), liquidated damages are recoverable if provided for in the plan agreement and do not equal more than 20% of unpaid contributions awarded.  The Master agreement states:

> Subject to accounting verification, liquidated damages
> shall be assessed on delinquent contributions at a flat
> rate of one hundred and fifty dollars ($150.00) per
> month.

Hagan Decl., Ex. C.  Attached to Hagan's declaration is a table labeled "Statement of Liquidated Damages Due" which shows an assessment against Defendants of $150 per month in liquidated damages for delinquencies every month beginning in February 2004 through December 2005, for a total of $2,500.00.  See Id., Ex. E. However, except for the documents discussed above covering

**United States District Court**
For the Northern District of California

September 2005 to December 2005, Plaintiffs provide no back-up documentation showing that Defendants were in fact delinquent paying their contributions during this period.  A simple recitation of money owed is not sufficient to prove up damages in a motion for default judgment.  See <u>Walters v. Statewide Concrete Barrier, Inc.</u>, C-04-2559 JSW, 2006 WL 2527776, *7-8 (N.D. Cal. Aug. 30, 2006).  Thus, the Court awards only liquidated damages for the months of September 2005 to December 2005: $600.

       3.   <u>Pre-Judgment Interest</u>

Plaintiffs request a total of $2,465.73 in pre-judgment interest on Defendants' unpaid contributions.  Mem. at 9. Interest on unpaid contributions based on a rate set by the employee benefit plan is recoverable under 29 U.S.C § 1132(g)(C)(i), even if liquidated damages have already been awarded.  <u>Northwest Administrators, Inc. v. A.D. Automotive Distributors Inc.</u>, No. C-05-2880 SC, 2006 WL 1626940, *5 (N.D. Cal. June 12, 2006).  The Master Agreement provides that "[a]ll delinquent contributions shall bear simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment."  See Hagan Decl., Ex. C.

The same problem afflicts Plaintiffs' request for prejudgment interest which afflicts their request for liquidated damages. Except for the months of September 2005 through December 2005, Plaintiffs provide no back-up documentation for their claim that contributions were delinquent and so no substantiation to their claim that interest is due for these other months.

The Court is also not completely satisfied with the

United States District Court
For the Northern District of California

documentation submitted in support for interest claimed on unpaid contributions for the months of September 2005 through December 2005.  For example, the Statement of Liquidated Damages Due lists $182.32 in interest due on Defendants' delinquent September 2005 "Vacation Holiday" contribution.  See Hagan Decl., Ex. E.  The March 3rd Table lists $1,958.52 in unpaid September 2005 Vacation Holiday Contributions.  See id. Ex. I.  One and half percent of $1,958.52 is $29.38, which multiplied by 8 (the number of months by which the contribution was late when the interest figures in the Statement of Liquidated Damages Due were calculated, see id., Ex. E.) equals $235.02.  The Court assumes the discrepancy between this amount and the amount now requested, $182.32, is due to the partial payment which Defendants made in early 2006. see id., ¶ 17.  Thus, the Court will accept the interest figures for September 2005 through December 2005 listed on the Statement of Liquidated Damages Due, but it will not, as requested by Plaintiffs, see Mem. at 9, attempt the impossible task of extrapolating out from these figures the interest due at the date of this ruling.[3]

Therefore, the Court awards a total of $1661.70 in prejudgment interest for unpaid contributions for the months of September 2005 through December 2005.

### 4.   Attorney's Fees and Costs

Plaintiffs seek $441.24 in costs and $4,342.50 in attorney's

[3]Without information regarding the amount by which Defendants satisfied their delinquencies to particular Trust Funds and the exact date on which this was done, such a calculation is not possible.  See Hagan Decl., ¶ 13.

United States District Court
For the Northern District of California

fees. Mem. at 9.   When plan documentation makes provisions for it,
Section 1132(g)(D) allows the recovery of reasonable attorney's
fees and costs incurred in seeking payment of unpaid
contributions.  See 29 U.S.C. 1132(g)(D).  The Trust Agreements
make such a provision. Leigh Decl., Ex. C.

       a.   Costs

    Plaintiffs base their demand for $441.24 in costs on filing
fees and the costs of personally serving the Defendants.  See
Leigh Decl., ¶ 13.  The Ninth Circuit has held in the context of
20 U.S.C. § 1132(g)(1) that courts are allowed to "award only the
types of 'costs' allowed by 28 U.S.C. § 1920, and only in the
amounts allowed by section 1920 itself, by 28 U.S.C. § 1821 or by
similar such provisions," Arquendo v. Mutual of Omaha Cos., 75
F.3d 541, 544 (9th Cir. 1996), a standard which is logically
applicable to the award of costs under § 1132(g)(2) as well.  A.D.
Automotive Distributors Inc.,, 2006 WL 1626940, at *7 (N.D. Cal.
June 12, 2006).

    Plaintiffs are entitled to an award of costs in the amount of
the filing fees, including E-Filing fees, in the amount of
$262.24, and the service-of-process fees of $179.00.  See 28
U.S.C. § 1920 (stating that a court may tax as costs fees of the
clerk and marshal); Civ. L.R. 54-3(a)(1) ("The Clerk's filing fee
is allowable if paid by the claimant."); Civ. L.R. 54-3(a)(2)
("Fees for service of process by someone other than the marshal
acting pursuant to FRCivP 4(c), are allowable to the extent
reasonably required and actually incurred."). The Court therefore
awards costs in the amount of $441.24.

1

          b.   Attorney's Fees

2        Plaintiffs' request of $4,342.50 in attorney's fees is based

3   on 19.3 hours of attorney time billed at $225.00 per hour.  See

4   Leigh Decl., ¶ 13.  In support, Plaintiffs submit a billing

5   statement listing the times which Plaintiffs' attorneys billed on

6   the matter.  See Leigh Decl., ¶ 13, Ex. F.

7        In determining the amount of attorney's fees to award in an

8   ERISA action, the Court applies "a hybrid loadstar/multiplier

9   approach."  D'Emanuele v. Montgomery Ward & Co., Inc., 904 F.2d

10  1379, 1383 (9th Cir. 1990) overruled on other grounds by

11  Burlington v. Daque, 505 U.S. 557(1992).  This approach involves

12  first determining the loadstar amount and then making any upward

13  or downward adjustments as the specifics of the situation demand,

14  such adjustments being the exception rather than the norm.  Id.

15  The loadstar amount is calculated by "multiplying the number of

16  hours reasonably expended on the litigation by a reasonable hourly

17  rate."  Id.

18       Counsel's rate of $225.00, while on the high end, is

19  reasonable in view of "prevailing market rate[s]."  Id. at 1384.

20       However, the number of hours billed is not reasonable given

21  the relevant simplicity of the case and level of activity in it.

22  By way of comparison, in two similar case, Peters, 2000 U.S. Dist.

23  LEXIS 19065, at *7 and A.D. Automotive Distributors Inc.,, 2006 WL

24  1626940, at *7, the attorneys spent respectively five and four

25  hours working on their cases.  Even compared to a similar case in

26  which the court awarded fees for significantly larger numbers of

27  hours billed, see Walters v. Shaw/Guehmann Corp., No. C-04058 WHA,

28

                              15

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    2004 U.S. Dist. LEXIS 11992, *9 (N.D. Cal. Apr. 15,

2    2004)(approximately 12 hours), the number of hours for which

3    Plaintiff's counsel requests compensation is high.

4          Counsel in Shaw/Guehmann Corp. spent a total of 4 hours

5    preparing the motion for default judgment and associated

6    declarations.  Plaintiffs' counsel spent 11.2 hours on the same,

7    see Leigh Decl., Ex. F., almost three times what plaintiff's

8    counsel in A.D. Automotive Distributors spent working on his

9    entire case.  Thus, 11.2 hours is not reasonable, especially in

10   light of the frequency with which Plaintiffs' counsel's law firm

11   handles these types of cases, a factor presumably reflected in

12   Plaintiffs' counsel's relatively high billing rate.[4]  Thus, the

13   Court reduces to 4 the amount of hours Plaintiffs' counsel may

14   bill for preparing their Motion and associated declarations.

15         The Court additionally declines to award attorney's fees in

16   the amounts requested for the following tasks on the grounds that

17   they appear unnecessary and/or excessive, and so smack of padding:

18       1) 3/22/06, 30 minutes, "Received and reviewed ADR schedule
         and CMC requirements. Work on Disclosures." Leigh Decl., Ex.
19       F.  Defendants had not yet answered, and so there was no
         reason to work on disclosures, which, indeed, Plaintiffs'
20       counsel appears never to have worked on again. This figure
         is therefore reduced by half to 15 minutes, or .25 of an
21       hour.

22       2) 5/10/06, 20 minutes; 5/23/06, 1 hour and 30 minutes;

23   _____

24         [4]By way of comparison, the attorneys in Peters, 2000 U.S.
     Dist. LEXIS 19065, at *7, and A.D. Automotive Distributors Inc.,,
25   2006 WL 1626940, at *7, both charged a rate of $180 per hour, while
     the attorney in Shaw/Guehmann Corp., 2004 U.S. Dist. LEXIS 11992,
26   at *9, charged $150 per hour.  It is additionally notable that the
     attorney in A.D. Automotive Distributors Inc. is one of the local
27   bar's most experienced litigators involved in this type of action.

28
                                  16

5/25/06, 30 minutes; 6/6/06, 1 hour and 20 minutes; 6/8/06, 30 minutes.  <u>Id</u>.  All of these entries either refer to tasks subsumed within preparation of the Motion or which have no apparent purpose given the posture of the case at the time, for example, "Notes for Discovery" on 6/6/06.  The Court therefore declines to award any fees for these tasks.

3) 6/29/06, 1 hour, detailing tasks related to a phone call from the Court regarding scheduling.  <u>Id</u>.  The Court is aware the phone calls in question were very brief, and cannot imagine that the other tasks listed, such as "Memo to secretary regarding same and E-filing notice of same" could have accounted for the rest of the time claimed.  <u>Id</u>.  The Court therefore reduces this amount to 30 minutes or .5 of an hour.

Reflecting these modifications, the court finds that the loadstar amount appropriate to the work done by Plaintiffs' counsel is equal to 7.85 hours, which billed at a rate of $225.00 per hour equals $1,766.25.  Finding no reason to modify that figure upward or downward due to exceptional circumstances, the Court awards that amount in attorneys fees to Plaintiffs.

5.  <u>Equitable Relief</u>

In addition to damages, Plaintiffs request that the Court issue a mandatory injunction compelling Defendants to permit Plaintiffs to audit Defendants' financial records.  Mem. at 10. Section 1132(g)(2)(E) empowers courts to grant such equitable relief as they deem appropriate.  29 U.S.C. § 1132(g)(2)(E).  The authority to conduct such an audit is granted to the Trust Funds by the Trust Agreements.  <u>See</u>, <u>e.g.</u>, Leigh Decl., Ex. C.  In light of this grant of authority and Defendants' pattern of delinquencies, the court grants Plaintiffs' request for injunction to allow Plaintiffs to conduct an audit, but only against Defendant Dronkanoki and limited to records regarding Defendant Dronkanoki's employment practices.

17

**United States District Court**
For the Northern District of California

6.   Post-Judgment Interest, Costs, and Attorney's Fees

Plaintiffs also request post-judgment interest, costs, and attorney's fees.  The Court declines to award such damages.  The statutory remedies provided in Section 1132(g)(2) for unpaid contibutions are exclusive.  See Parkhurst v. Armstrong Steel Erectors, Inc., 901 F.2d 796, 797 (9th Cir. 1990).  And, as the foregoing discussion demonstrates, a plaintiff's entitlement to those remedies is subject to its proving up its entitlement to them.  The Court declines the invitation to allow Plaintiffs to avoid this requirement through issuance of an amorphous forward-looking award of potential damages.  If Defendants continue to be delinquent, they will be subject to another suit by Plaintiffs and thus another set of damages.  The Court feels this is, and should be, sufficient incentive for Defendants to cease being delinquent in its contributions going forward.

/

/

/

/

/

/

/

/

/

/

/

18

V.   **CONCLUSION**

For the aforementioned reasons, the Court GRANTS Plaintiffs' motion for default judgment and AWARDS damages against Defendants jointly and severally as follows:  $12,638.95 in unpaid contributions; $600 in liquidated damages; $1,661.70 in pre-judgment interest; $441.24 in costs; and $1,766.25 in attorney's fees, for a total of $17,108.14.  The Court further ORDERS Defendant Dronkanoki to give Plaintiffs reasonable access to its records so that Plaintiffs can audit its employment practices.


IT IS SO ORDERED.

Dated: September 11, 2006

_____
UNITED STATES DISTRICT JUDGE